IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                        :
C.H., et al.,                           :        Civ. A. No. 14-CV-06210-MSG
                                        :
                    Plaintiffs,         :
                                        :
          v.                            :        ORAL ARGUMENT REQUESTED
                                        :
THE SCHOOL DISTRICT OF                  :
PHILADELPHIA,                           :
                                        :
                    Defendant.          :
_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER
FED. R. CIV. P. 12(B)(1) AND (6)**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     APPLICABLE LAW ............................................................................ 2

     A.     Special Education Under Federal and Pennsylvania Law ..................... 2

     B.     Extended School Year Services .......................................................... 3

III.    FACTUAL BACKGROUND ............................................................... 4

     A.     The School District of Philadelphia's ESY Services ........................... 4

     B.     Plaintiffs' First Amended Complaint ................................................. 5

            1.     Plaintiff C.H. ................................................................... 5

            2.     Plaintiff E.W. .................................................................. 6

            3.     Plaintiff J.F. ................................................................... 6

IV.    ARGUMENT ...................................................................................... 8

     A.     Plaintiffs Lack Standing To Obtain The Relief They Seek Under The IDEA ........ 9

            1.     Plaintiffs Do Not Allege They Suffered Substantive Harm Under The IDEA. ........ 11

            2.     Plaintiffs' Alleged Procedural Violation Is Not Actionable. ................... 15

     B.     E.W. Is Not Aggrieved And His Claims Are Time-Barred. ................................. 18

V.     CONCLUSION .................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)................................................................................8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................8

*Blunt v. Lower Merion School District,*
   559 F. Supp. 2d 548 (E.D.Pa. 2008), *aff'd* 767 F.3d 247 (3d Cir. 2014)................................18

*C.H. v. Cape Henlopen School District,*
   606 F.3d 59 (3d Cir. 2010)................................................................................10

*Constitution Party of Pa. v. Aichele,*
   757 F.3d 347 (3d Cir. 2014)................................................................................8

*D.S. v. Bayonne Board of Education,*
   602 F.3d 553 (3d Cir. 2010)................................................................................ passim

*Dibattista v. Buckalew, Frizell & Crevina, LLP,*
   574 F. Appx. 107 (3d Cir. 2014)................................................................................12

*Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers,*
   141 F.3d 71 (3d Cir. 1998)................................................................................8

*FW/PBS, Inc. v. City of Dallas,*
   493 U.S. 215 (1990)................................................................................9

*Honig v. Doe,*
   484 U.S. 305 (1988)................................................................................2, 3

*In re Burlington Coat Factory Securities Litigation,*
   114 F.3d 1410 (3d Cir. 1997)................................................................................14

*In re Ins. Brokerage Antitrust Litigation,*
   618 F.3d 300 (3d Cir. 2010)................................................................................8

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action,*
   678 F.3d 235 (3d Cir. 2012)................................................................................9

*IPSCO Steel (Ala.), Inc. v. Blaine Construction Corp.,*
   371 F.3d 150 (3d Cir. 2004)................................................................................18

*J.T. ex rel. A.T. v. Dumont Public Schools,*
   533 F. Appx. 44 (3d Cir. 2013)................................................................................10, 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 9

*M.A. ex rel. E.S. v. State-Operated School District*,
    344 F.3d 335 (3d Cir. 2003) ................................................................................... 2

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................. 10

*Pryor v. National Collegiate Athletic Association*,
    288 F.3d 548 (3d Cir. 2002) ................................................................................. 18

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) ................................................................................... 18

*Ridley School District v. M.R.*,
    680 F.3d 260 (3d Cir. 2012) ................................................................................... 2

*Robinson v. Pinderhughes*,
    810 F.2d 1270 (4th Cir. 1987) ....................................................................... 18, 19

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ............................................................................................. 10

*Warth v. Seldin*,
    422 U.S. 490 (1971) ......................................................................................... 9, 10

*Watson v. City of Newark*,
    746 F.2d 1008 (3d Cir. 1984)) ............................................................................. 18

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ............................................................................................... 9

*Winkelman v. Parma City School District*,
    550 U.S. 516 (2007) ............................................................................................. 10

**STATUTES**

20 U.S.C. § 1400 ........................................................................................................ 1, 2

20 U.S.C. § 1414(d) ......................................................................................................... 2

20 U.S.C. § 1415(b) ......................................................................................................... 3

20 U.S.C. § 1415(f) ............................................................................................. 3, 10, 11

20 U.S.C. § 1415(i) ................................................................................................... 3, 19

29 U.S.C. § 794 ............................................................................................................. 11

**OTHER AUTHORITIES**

34 C.F.R. Ch. 300 .................................................................................................2, 3

34 C.F.R. § 300.103–113 ...........................................................................................3

34 C.F.R. § 300.106 ..............................................................................................3, 13

34 C.F.R. §§ 300.320–324 .........................................................................................2

71 Federal Register 46540-01 (Aug. 14, 2006) .........................................................4

22 Pa. Code § 14.1, *et seq.*......................................................................................3

22 Pa. Code § 14.121 .................................................................................................3

22 Pa. Code § 14.132 .............................................................................................3, 4

Federal Rule of Civil Procedure 12(b)(1) ...........................................................8, 10

Federal Rule of Civil Procedure 12(b)(6) ...........................................................8, 10

Federal Rule of Civil Procedure 23 ..........................................................................17

## I.    INTRODUCTION

Plaintiffs, three students who attend schools in Philadelphia, bring a putative class action against The School District of Philadelphia, asserting that the School District is violating the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*, and related state and federal regulations, because the School District decides, on a District-wide basis, when (*i.e.,* the times, days and weeks) it will provide Extended School Year ("ESY") services to the thousands of disabled District students who qualify for it.  Plaintiffs make this assertion even though, consistent with the IDEA, decisions about ESY are made pursuant to each child's "individualized education program," or "IEP," and by each child's IEP team.  In fact, each disabled child's IEP Team individually determines the goals and objectives for that child, including whether the child is eligible for ESY services, and if the child is eligible, what individualized services he or she will receive during ESY and the amount of such services. Plaintiffs also make this assertion even though the School District's decision regarding when ESY services will be offered is no different than the School District's decision regarding when the regular school year will open and end, the hours of the school day, and holidays or breaks.

Aside from complaining about the School District's decision *when* ESY services will be provided, Plaintiffs do not explain how this decision causes them any substantive harm.  Indeed, Plaintiffs do not allege that the School District's decision impedes on their education, that they are being deprived of an educational benefit, or that the ESY services are inappropriate or insufficient; that decisions about their ESY eligibility or ESY services are not made on an individualized basis; or that their parents are not involved in these truly meaningful – and individualized – decisions about ESY.  Without such allegations, Plaintiffs do not have standing to bring this lawsuit.  Indeed, as the Third Circuit has repeatedly held, students and their parents

do not have standing to assert violations of the IDEA when they have not alleged any substantive harm.  For these reasons, Plaintiffs' claims should be dismissed.

Plaintiff E.W.'s claims should be dismissed for two additional reasons.  First, he is not an aggrieved party because the Hearing Officer in his administrative case granted him all the relief he sought.  Second, his claims are time-barred.

## II.   APPLICABLE LAW

### A.   Special Education Under Federal and Pennsylvania Law

The IDEA is a "comprehensive scheme of federal legislation designed to meet the special educational needs of children with disabilities."  *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 338 (3d Cir. 2003).  The Act is designed to ensure that all children with disabilities have access to a "free appropriate public education [FAPE] . . . designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A); *see also Honig v. Doe*, 484 U.S. 305, 310 (1988) (discussing purpose of IDEA, originally titled Education of the Handicapped Act).

The "centerpiece" of the IDEA is the "individualized education program," or "IEP."  *See D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010).  An IEP is a "written statement for each child with a disability that is developed, reviewed, and revised" by a group of school district personnel and the child's parents (the "IEP Team").  20 U.S.C. § 1414(d)(1)(A)(i) & (B); 34 C.F.R. §§ 300.320–324.  The IEP Team works collaboratively to formulate the educational objectives and program for each child and to ensure that that child is provided FAPE.  *See, e.g.*, *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012).  The IEP Team must review and, if appropriate, revise the IEP at least once a year.  *See* 20 U.S.C. § 1414(d)(4)(A); 34 C.F.R. § 300.324(b).

Both the United States and Pennsylvania Departments of Education have promulgated regulations to facilitate the provision of FAPE to all children with disabilities.  *See* 34 C.F.R. Ch.

2

300; 22 Pa. Code § 14.1, *et seq.*  Many of these regulations require school districts to make available specific services or programs if a child's IEP Team determines, on an individualized basis, that such programs or services are necessary and appropriate for that child's education. *See, e.g.*, 34 C.F.R. § 300.103–113 (non-academic services, physical education, etc.); 22 Pa. Code § 14.121 (child find services).  One service that school districts must make available is additional educational programming, or extended school year ("ESY") services.  *See* 34 C.F.R. § 300.106.

To ensure that each child is provided FAPE and that parents have an opportunity for meaningful input into decisions affecting their child's FAPE, the IDEA provides an elaborate system of procedural rights.  *See Honig*, 484 U.S. at 311.  A parent can file an administrative complaint with a State or local educational agency, 20 U.S.C. § 1415(b)(6), and is entitled to an "impartial due process hearing" conducted by that agency, *id.* at § 1415(f)(1).  Parents dissatisfied with the agency's administrative decision may bring a civil action in federal court within 90 days from the date of the decision of the Hearing Officer.  *Id.* at § 1415(i)(2)(A), (B).

**B.**     **Extended School Year Services**

As noted, Federal and Pennsylvania regulations require school districts to make ESY services available to disabled children.  ESY services include special education and related services provided to students with disabilities beyond the regular 180-day school year.  These services "must be provided only if a child's IEP Team determines, on an individualized basis . . . that the services are necessary for the provision of FAPE to the child."  34 C.F.R. § 300.106(a)(2); *see also* 22 Pa. Code. § 14.132.  A school district cannot "limit [ESY] services to particular categories of disability" or "unilaterally limit the type, amount, or duration of those services."  34 C.F.R. § 300.106(a)(3).  The general goal of ESY is to reinforce certain skills and

behaviors to children with the potential to regress as a result of an interruption in educational programming.  *See, e.g.*, 22 Pa. Code § 14.132(a)(2).

The provision of ESY services is not expressly required by the IDEA.  Rather, it is based on a child's entitlement to FAPE.  *See* 71 F.R. 46540-01, 46582 (Aug. 14, 2006).  The U.S. Department of Education promulgated a regulation regarding ESY to ensure that State and local educational agencies "understand their obligation to ensure that children with disabilities who require ESY services in order to receive FAPE have the necessary services available to them, and that individualized determinations about each disabled child's need for ESY services are made through the IEP process."  *Id.*  "[A]t a minimum, the IEP," including the provision of ESY, "must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential," but "it need not necessarily provide the optimal level of services that parents might desire for their child."  *Bayonne Bd. of Educ.*, 602 F.3d at 557 (internal citations omitted).

## III.    FACTUAL BACKGROUND

### A.    The School District of Philadelphia's ESY Services

The School District of Philadelphia serves approximately 19,240 students with disabilities.  First Amended Complaint (FAC) at ¶ 8.  The School District provides ESY services to all children with disabilities whose IEP Team determines they are eligible, and not all are.[1]

The School District offers the ESY services at issue in Plaintiffs' First Amended Complaint during the summer months.  In 2014, the services were offered on Tuesdays, Wednesdays and Thursdays from 9 am to 1 pm from July 1, 2014 through August 7, 2014.  *See*

---

[1] The FAC does not specifically allege how many of the 19,240 students are eligible for, or receive, ESY services.  If the Court thinks it is relevant, the School District is happy to provide this information, which should be undisputed, at this stage of the litigation.

FAC at Ex. A.  Prior to the start of ESY, the School District sends a registration form to the parents of all children eligible for ESY services, as determined in each child's IEP.  *See id.*  The purpose of the form is simply to allow the School District to make logistical decisions about ESY – *e.g.*, establish bus routes, determine what materials and food will be needed at each ESY school, etc.  The form asks parents to state whether their child will attend ESY, and if yes, where they would like the School District to pick up and drop off their child.  *Id.*  The form also reminds parents that the initial ESY eligibility decision is made at the child's IEP Team meeting, and that the IEP Team develops and decides on the specific ESY programming that will be provided to the child.  *Id.*

### B.  Plaintiffs' First Amended Complaint[2]

The three named Plaintiffs bring a putative class action on behalf of themselves and others "similarly situated" against the School District for alleged violations of the IDEA's requirements and procedures regarding ESY services.

### 1.  Plaintiff C.H.

Plaintiff C.H. allegedly is a 15-year-old child with learning disabilities who resides in and attends a public school in the School District of Philadelphia and is eligible for special educational services.  FAC at ¶ 18.  C.H.'s parent requested an administrative hearing, alleging that the School District denied her child FAPE and denied her meaningful participation in the decision-making process regarding her child's education, in part because the School District allegedly determined C.H.'s "ESY program by making decisions about the amount and duration of services outside the IEP process and failing to consider [C.H.'s] individual circumstances." FAC at Ex. B., p. 3.

---

[2] For purposes of this motion to dismiss, the School District accepts as true the allegations in the FAC.

C.H.'s IEP Team concluded that ESY services were appropriate for C.H., and the IEP Team discussed such services at multiple IEP meetings.  *See id.* at p. 21.  Moreover, C.H.'s parent never raised concerns regarding whether or how such services would be provided.  *Id.*  In the administrative process, the hearing officer concluded on August 3, 2014 that the School District had *not* committed any procedural violations of the IDEA and that the ESY services provided to C.H. did *not* constitute a denial of FAPE.  *See id.* at p. 21–22.

    2.    Plaintiff E.W.

Plaintiff E.W. allegedly is a 13-year-old child with learning disabilities who also resides and attends a public school in the School District of Philadelphia.  E.W. filed an administrative complaint regarding the ESY services the School District provided him in 2014, arguing that the services were not sufficiently individualized for E.W.  FAC at ¶ 19 & Ex. D, p. 3, 7.  The Hearing Officer issued his decision on July 25, 2014.  *See id.*  The Hearing Officer found that during the IEP team meeting for E.W. in June 2014, the IEP determined that E.W. was eligible for ESY programming, but because the meeting "ended abruptly," the IEP team "was unable to have a substantive discussion of ESY programming."  *Id.* at Ex. D., p. 5.  As a result, the Hearing Officer found that E.W.'s ESY services lacked individualization, in part because there was no "consideration of ESY eligibility/programming having been considered by the IEP team" at all. *Id.* at Ex. D, p. 7.  The officer awarded the student 150 hours of compensatory education.  *Id.* at p. 8.

    3.    Plaintiff J.F.

Plaintiff J.F. allegedly is a 14-year-old child who resides and attends a public school in the School District of Philadelphia.  The FAC alleges that J.F.'s parents requested ESY services for J.F. that were "individually tailored, including tutoring and certain therapies in various amounts," and that the School District "responded in writing that its program was appropriate."

FAC at ¶ 20.  J.F.'s parents paid for private services during the summer of 2014 and requested a due process hearing in October 2014.  *Id.* at ¶ 15.c.

The hearing was held on December 1, 2014, and the Hearing Officer issued her decision on December 23, 2014.  Contrary to the implication in Plaintiff's FAC, *see id.* at ¶ 20, the Hearing Officer found that the School District's offer of ESY services was substantively appropriate and did not deny J.F. a free and appropriate public education, *see id.* at Ex. K, p. 8. Specifically, the Hearing Officer rejected J.F.'s argument that the School District "failed to individualize" J.F.'s ESY services simply by proposing an ESY program during a specific period of time during the summer.  *Id*.  "What individualizes an ESY program," the Hearing Officer explained, "are the goals and objectives in the ESY portion of the IEP in light of the child's educational needs."  *Id.*

But the Hearing Officer also found that the School District committed a procedural violation by wholly failing to discuss the ESY program the School District was offering during multiple IEP Team meetings for J.F.  *Id.* at p. 7.  The Hearing Officer explained:  "I do not mean to imply that the District had to adopt the Parents' [ESY] proposal, which was decidedly inappropriate, but I do mean that the District had the obligation to conduct a full and meaningful discussion of the child's ESY needs with the Parent.  I therefore find that the District did commit a procedural violation in that they denied the Parents meaningful participation in planning their child's ESY program for summer 2014."  *Id.*  As a result of this actionable procedural violation, the Court awarded J.F. and his parents compensatory education up to $2,425.  *Id.* at p. 9–10.

*      *      *      *      *      *

The three named Plaintiffs sought, through the IDEA's administrative process, compensatory education or individualized ESY services and asserted multiple violations of the

IDEA, including that the School District's ESY services are substantively unreasonable and infringe on their right to FAPE.  FAC at ¶¶ 18–20.  Significantly, however, in this putative class action, Plaintiffs have dropped all but one of their claims and collectively seek only equitable relief from the School District's alleged policy for ESY that sets the amount and duration of services outside the IEP process by designating the weeks, days and hours during which the School District will provide ESY to all students whose IEP Teams determine they need these services.  *See, e.g.*, *id.* at ¶¶ 4, 40.

## IV.   ARGUMENT

Plaintiffs' claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) authorizes dismissal of a complaint if the plaintiffs lack standing to raise their claims.  In evaluating a facial attack on a complaint, as the School District asserts here, courts apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6).  *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint and asks whether, construing the complaint "in the light most favorable to the plaintiff" it contains "enough factual matter (taken as true) to suggest the required elements of the claims asserted." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations omitted).  To pass the test of legal sufficiency, a complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and may not consist of "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**A.      Plaintiffs Lack Standing To Obtain The Relief They Seek Under The IDEA.**

Plaintiffs lack standing to obtain the equitable relief they seek under the IDEA, because they do not allege substantive harm and purely procedural claims are not actionable.  If Plaintiffs do not have standing under the IDEA, this Court lacks jurisdiction over the case.  *See, e.g.*, *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir. 1998) (plaintiff must establish standing to meet the "case or controversy" requirement under Article III of U.S. Constitution).

To meet the constitutional standing requirement, a plaintiff must establish three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted)).  Although at the motion to dismiss stage a court must "accept as true all material allegations of the complaint," *Warth v. Seldin*, 422 U.S. 490, 501 (1975), "standing cannot be inferred argumentatively from averments in the pleadings but rather must affirmatively appear in the record," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal citation omitted); *see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (plaintiff must "clearly and specifically set forth facts sufficient to satisfy" the Article III standing requirement).

The Third Circuit has repeatedly stated that "the injury-in-fact element is often determinative."  *In re Schering Plough Corp.*, 678 F.3d at 245 (quotations and citations omitted).

The injury must be "an invasion of a legally protected interest," *id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)), and the legally protected interest may be derived only by statute, *see, e.g.*, *Warth*, 422 U.S. at 500 ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.").

Under the IDEA, a purportedly aggrieved party has standing to assert a violation of the Act in two circumstances.  First, an aggrieved party has standing to assert substantive harm under the Act.  Second, a school district's failure to comply with the procedural requirements of the IDEA is actionable, but "only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." *Bayonne Bd. of Educ.*, 602 F.3d at 565 (citation omitted) (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525–26 (2007)); *see also* 20 U.S.C. § 1415(f)(3)(E).  That is because "[al]though it is important that a school district comply with the IDEA's procedural requirements, rather than being a goal in itself, such compliance primarily is significant because of the requirements' impact on students' and parents' substantive rights." *Id.*

In this case, Plaintiffs do not have a legal right to the relief they seek because (1) they do not allege that they suffered substantive harm under the IDEA, and (2) their allegations constitute, at best, a procedural violation that is not actionable.  Plaintiffs therefore lack standing to pursue their claims on behalf of themselves and the putative class. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").  Their claims should be dismissed under Fed. R. Civ. P. 12(b)(1) and (b)(6).

1.      <u>Plaintiffs Do Not Allege They Suffered Substantive Harm Under The IDEA.</u>

The IDEA gives disabled children and their parents the opportunity to seek redress if their substantive rights are violated.  *See, e.g.*, *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010).  Substantive rights under the IDEA include a child's right to FAPE and his or her right to be educated in the least restrictive environment.  *See, e.g.*, *J.T. ex rel. A.T. v. Dumont Public Schools*, 533 F. Appx. 44, 48–49 (3d Cir. 2013) (non-precedential) (referencing these substantive rights); *see also* 20 U.S.C. § 1415(f)(3)(E)(i) (Hearing Officer's decision made on substantive grounds must be based on determination as to whether child received FAPE).

In *J.T.*, a case like this one, the plaintiffs brought a putative class seeking declaratory and injunctive relief from a New Jersey school district's alleged violations of the IDEA.  Specifically, the plaintiffs asserted that the school district's "blanket" policy of placing kindergarten students who require special education services in schools other than their neighborhood schools violated the IDEA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because, according to Plaintiffs, the policy failed to individually consider whether kindergartners could receive special education services in their neighborhood schools.  *See J.T. ex rel. A.T.*, 533 F. Appx. at 47–49.  The Third Circuit held that the plaintiffs did not have standing because they did not allege a substantive harm under the IDEA.  *Id.* at 48–49.  In particular, the plaintiffs did not allege that the school district failed to provide them a FAPE or failed to educate them in the least restrictive environment.  *Id.* at 49.

In this case, Plaintiffs likewise do not allege substantive harm under the IDEA.  Plaintiffs claim that the School District violates the IDEA because it "pre-selects" the days and times on which ESY services will be provided.  But Plaintiffs do not allege their education is being impeded in any way.  Specifically, Plaintiffs do *not* allege:

- That the ESY services the School District provides are insufficient (*i.e.*, that they should be receiving more days or more weeks);

- That the ESY services the School District provides are inappropriate (*i.e.*, that they should be receiving some other kinds of services);

- That the goals and objectives in the ESY portions of the Plaintiffs' IEPs are not individualized;

- That the School District's ESY services are depriving them of an educational benefit;

- That the School District's decisions about whether to provide ESY services for an individual student are the same for all students in the School District as opposed to based on the individual needs of each student;

- That the School District's decisions about what services to provide are not individualized; or

- That the decisions about ESY eligibility or what services to provide are made without meaningful parental involvement.

*See* FAC at ¶¶ 34–46.[3]

In other words, just like the plaintiffs in *J.T.* did not allege substantive harm and sought relief from only the school district's decision regarding what school certain kindergartners would attend, Plaintiffs have not alleged a substantive harm and merely seek relief from the School District's ministerial decision regarding scheduling ESY services for all eligible students.

---

[3] Plaintiffs now allege for the first time in their FAC that they are being "denied a free appropriate public education both procedurally and substantively as a result" of the School District's ESY schedule. *See* FAC at ¶¶ 18–20. Plaintiffs added this bare-bones allegation in response to the School District's original motion to dismiss (Dkt # 8) in a clear attempt to get this case past the motion to dismiss stage. But Plaintiffs' underlying allegations ***are identical*** to those alleged in the Original Complaint. Indeed, they offer no new allegations describing the harm that Plaintiffs now allege to be suffering. This "naked assertion" of a denial of FAPE is insufficient to establish Plaintiffs' standing and accordingly cannot defeat the School District's motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555); *cf. Dibattista v. Buckalew, Frizell & Crevina, LLP*, 574 F. Appx. 107, 113 (3d Cir. 2014) ("The problem with the complaint is not the lack of some 'magic words,' but the lack of any assertions to support the claim.").

The Hearing Officer in C.H.'s administrative proceeding aptly summarized why the School District's summer ESY schedule is permissible and makes sense, and why it does not cause substantive harm under the IDEA:

> [I]t is perfectly reasonable for any school district, particularly a large district with a substantial special education population, to establish time parameters for delivery of ESY services over the summer. **Availability of buildings, teachers, support staff, and transportation must be established in such a way that every child who is entitled to ESY receives it.  The Parents' argument that offering specific dates, days and times is a "cookie cutter" approach to Student's ESY is rejected – the ESY schedule is no more of a cookie cutter approach than establishing a school year calendar with opening and ending dates, hours of the school day, and holidays or breaks.  What individualizes an ESY program are the goals and objectives in the ESY portion of the IEP.**  Student's ESY goals and objectives relate to the goals and objectives addressing Student's needs during the school year.  Conclusions of hearing officers are specific to each case, each set of facts, and each witness and document.

FAC at Ex. B, p. 22 (emphasis added).  This Hearing Officer came to the same conclusion in J.F.'s administrative case.  *See* FAC at Ex. K, p. 8.

Plaintiffs point to 34 C.F.R. § 300.106 and guidelines the Pennsylvania Department of Education issued regarding ESY to support their claims.  *See* FAC at ¶ 45.  Specifically, Plaintiffs cite Section 300.106(a)(3)(ii), which states that a public educational agency cannot "unilaterally limit the type, amount, or duration" of ESY services.  Plaintiffs also rely on the School District's ESY form as supposed evidence that the School District unilaterally limits the amount and duration of each student's ESY services.  *See, e.g.*, FAC at ¶ 18 & Ex. A.  But the School District does not unilaterally limit the ESY services at issue in this litigation in any way; rather, it makes individualized decisions regarding ESY at each child's IEP Team meeting and then provides individualized ESY services on specific days during the summer months.  Moreover, the form, which is nothing more than a red herring, underscores the individualized

13

decision-making process regarding ESY services.  The first paragraph of the form states that the initial ESY decision was made at the child's IEP Team meeting; the second paragraph states that the School District will provide the child with the "ESY program outlined in his/her IEP."  *Id.* at Ex. A.  Because these substantive decisions are made at IEP meetings, they are necessarily made on an individualized basis with significant parental involvement.

The individualized nature of the School District's ESY services is exemplified by the three named Plaintiffs' 2014 IEPs.[4]  (*See* relevant excerpts of Plaintiffs' IEPs, attached hereto as Ex. 1–3.)  Each file dedicates multiple pages to the unique objectives and goals for the respective Plaintiffs' ESY services, and then specifies the amount of time the IEP teams recommended dedicating to particular services:

- Plaintiff C.H.'s IEP team recommended 720 minutes of autistic support per week for six weeks, 120 minutes of speech and language therapy per IEP term, and 30 minutes of one-on-one assistance per IEP term (Ex. 1);

- Plaintiff E.W.'s IEP team recommended 710 minutes of learning support per week for six weeks, and 60 minutes of speech and language therapy per IEP term (Ex. 2); and

- Plaintiff J.F.'s IEP team recommended 620 minutes per week of autistic support with one-on-one assistance for six weeks, 30 minutes of occupational therapy per week during this time period, 30 minutes of physical therapy per month during this time period, and 30 minutes of speech and language therapy per week during this time period (Ex. 3).

---

[4] Although the IEPs were not attached to Plaintiffs' FAC, to the extent necessary, the Court may consider authentic documents attached to a motion to dismiss when Plaintiffs' claims are based on the document.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Here, Plaintiffs' claims are based on allegations and/or decisions in their respective administrative hearings, and their IEPs are a vital component of the administrative process.  However, the Court need not rely on Plaintiffs' IEPs to grant the School District's motion to dismiss.

The significant variation of ESY services for the named Plaintiffs themselves flatly contradicts the assertion that the School District has an ESY policy that "predetermines" the program for all students.  *See* FAC at ¶ 4.

In sum, Plaintiffs do not allege any substantive harm under the IDEA.  As explained by the Hearing Officer in C.H.'s administrative proceeding, and as evidenced by each Plaintiff's IEPs, the ESY services at issue in this case that will be provided to each disabled child in the School District are discussed and determined at that child's IEP Team meetings.  These individualized services are then provided when the School District offers its ESY services. Plaintiffs are conflating individualized ESY decisions with the School District's administrative decision regarding where and when these services are to be provided.[5]  Accordingly, Plaintiffs do not have standing to obtain the relief they seek.

2.    Plaintiffs' Alleged Procedural Violation Is Not Actionable.

At best, Plaintiffs have alleged a procedural violation of the IDEA but not even an actionable one.  As mentioned above, a school district's procedural violation of the IDEA is actionable only if it (a) results in a loss of educational opportunity for the student, (b) seriously deprives parents of meaningful participation rights regarding their child's education, or (c) deprives the child of educational benefits.  *See Bayonne Bd. of Educ.*, 602 F.3d at 565 (citation omitted).  With respect to (a) and (c), as set forth in section IV.A.1, Plaintiffs do not allege how

---

[5]  While Plaintiffs don't come right out and say it, it appears they believe that "amount" and "duration" effectively mean the School District's ESY schedule, and that IEP Teams need to individually discuss and decide whether a child's ESY services should be, for example, on Mondays and Wednesdays from 1 pm to 5 pm in July or Tuesdays and Thursdays from 9 am to 1 pm in June.  Making these kinds of ministerial scheduling decisions in this manner would be a logistical nightmare and an unbearable financial burden for the School District, which provides ESY services to thousands of students each year, and is not required or warranted, especially when Plaintiffs here haven't alleged any facts to support their bald assertion that the School District's current ESY program is not providing them with FAPE.

the School District's ESY schedule has caused a loss of educational opportunities or deprived students of educational benefits.

Nor do Plaintiffs allege (b), *i.e.*, that their parents were seriously deprived of meaningful participation in decisions regarding their child's education.  As discussed above, Plaintiffs do not allege that decisions regarding ESY eligibility or ESY services were made outside IEP Team meetings or otherwise made without parental participation.

Plaintiffs seemingly recognize this impediment, because they use key words in paragraph 48 of their FAC in an apparent attempt to bootstrap the School District's alleged procedural inadequacy into an actionable claim under the IDEA.  The FAC alleges that the School District's decision to set the days, weeks and hours it will provide ESY services for all ESY-eligible students "substantially infringes upon meaningful parental involvement" and is "made wholly outside of the procedural safeguards and requirements of the IDEA."  FAC at ¶ 48.  But as noted, the FAC does not allege that parents are uninvolved in the decisions regarding whether a child needs ESY services or what those individualized ESY services will be.  Those are the ***meaningful*** decisions regarding the provision of FAPE.  The fact that students show up on the same days to receive the ESY services does not mean that each student receives the same services, as evidenced by the three Plaintiffs' IEPs.[6]

---

[6] To be sure, decisions regarding weeks, days or hours of ESY services could, under some fact-specific circumstances, affect the provision of FAPE.  And if those decisions do affect the provision of a child's FAPE, that child or his parents can file a complaint under the IDEA seeking compensatory education.  That is exactly what Plaintiff E.W. did.  He filed an administrative complaint seeking compensatory education because the ESY services the School District proposed for him allegedly lacked individualization.  The Hearing Officer agreed, finding that there was no consideration of E.W.'s ESY eligibility or services at his IEP meeting, and awarded E.W. compensatory education.  FAC at Ex. D, p. 7.  But unlike E.W.'s *administrative* claims, neither E.W. nor the other named Plaintiffs detail how they were harmed under the IDEA in the FAC at issue here.

The Hearing Officer's decision in J.F.'s administrative case exemplifies the difference between procedural violations that are actionable because they result in the denial of FAPE and procedural violations that are not actionable.  The Hearing Officer found that ESY was not discussed at all:  "There was no substantive discussion about [J.F.'s] individual needs related to ESY programming," and the School District never responded to J.F.'s parents' questions about their child's ESY programming.  FAC at Ex. K, p. 5.  Because the School District "significantly impeded the Parent's [sic] opportunity to participate in the decision-making process regarding the provision of FAPE" by not "conduct[ing] a full and meaning discussion of the child's ESY needs with the Parent[s]," the Hearing Officer held that the School District's procedural violation "result[ed] in the denial of FAPE" and, accordingly, awarded J.F. compensatory education.  *Id.* at p. 7–9.

In this case, however, neither J.F. nor the other Plaintiffs allege that School District personnel failed to discuss ESY at their respective IEP Team meetings.   Rather, Plaintiffs allege only that they were not involved in the ***ministerial*** decision regarding the weeks, days and hours that these ESY services would be provided.  That is not a ***meaningful*** decision, and the FAC does not allege that it affects Plaintiffs' education in any way.  *See, e.g.*, FAC at Ex. B, p. 22 & Ex. K, p. 8 (Hearing Officer's decisions in C.H. and J.F.'s administrative proceedings).

Because Plaintiffs do not allege that the School District's decisions about ESY eligibility and ESY services are not individualized, and because Plaintiffs' allegations about the School

Of course they do not.  If Plaintiffs detailed how they were substantively harmed – *i.e.*, how the days, weeks and hours during which the School District provides ESY services denied Plaintiffs FAPE – they would be unable to seek class-wide relief, because an analysis of FAPE that those kinds of allegations would require is dependent on the particular facts and circumstances surrounding each child's needs and education and could not meet the requirements of Fed. R. Civ. P. 23.  Without these details regarding how Plaintiffs have been harmed, however, Plaintiffs do not assert an actionable violation of the IDEA, and therefore do not have standing to obtain the relief they seek.

District's ESY schedule amount to, at best, an IDEA procedural violation that is not actionable, Plaintiffs do not have standing to assert a facial violation of the IDEA.[7]

### B.    E.W. Is Not Aggrieved And His Claims Are Time-Barred.

E.W.'s claims should be dismissed for two additional reasons.  First, E.W. is not "aggrieved" because the Hearing Officer already afforded him all the relief he sought during his administrative proceeding.  "Generally, a party who receives all of the relief which he sought is not aggrieved by the judgment affording the relief and cannot appeal from it."  *Watson v. City of Newark*, 746 F.2d 1008, 1010 (3d Cir. 1984); *see also IPSCO Steel (Ala.), Inc. v. Blaine Const. Corp.*, 371 F.3d 150, 154 (3d Cir. 2004) ("In order to have standing to appeal a party must be aggrieved by the order of the district court from which it seeks to appeal.") (quotation marks omitted).  E.W. requested an administrative hearing regarding whether the School District's ESY services lacked individualization; and if they lacked individualization, he sought compensatory relief.  FAC at Ex. D, p. 3.  The Hearing Officer found in E.W.'s favor and awarded him 150 hours of compensatory education.  *Id.* at p. 8.  E.W. got what he requested; he has no standing to appeal.[8]  *See Robinson v. Pinderhughes*, 810 F.2d 1270, 1271 (4th Cir. 1987) ("plaintiffs had

---

[7] If the Court finds that Plaintiffs have standing to assert their claims, the School District reserves the right to argue that Plaintiffs failed to exhaust their administrative remedies and that class action relief is improper because the putative class cannot meet the requirements of Fed. R. Civ. P. 23.

[8] The FAC alleges that E.W. seeks declaratory relief so that his IEP Team will individually determine his ESY needs and programming "in future years."  FAC at ¶ 31.  E.W.'s concession that he does not need relief *now* proves the School District's point.  Whether E.W. may need ESY services, and what services he may need, in future years will be determined in the future; E.W. does not have standing to seek such hypothetical, prospective relief at this time. *See, e.g.*, *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of possible future injury are not sufficient to satisfy Article III.") (internal quotation marks and citation omitted); *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 561 (3d Cir. 2002) ("In cases where a plaintiff seeks injunctive or declaratory relief only, . . . standing will not lie if adjudication rests upon contingent future events that may not occur as anticipated or indeed may not occur at all.") (internal quotation marks and citations omitted; alterations omitted).

neither the responsibility nor the right to appeal the favorable decision by the local Hearing Officer since they were not aggrieved by his decision").

E.W.'s claims are also time-barred. The Hearing Officer issued its decision on July 25, 2014. E.W. had 90 days, or until October 22, 2014, to file an action in federal court. *See* 20 U.S.C. § 1415(i)(2)(B). Because E.W. waited until October 30, 2014 to file this putative class action, his claims are time-barred. *See, e.g.*, *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 292–93 (3d Cir. 2014) (affirming that certain claims are barred by 90-day statute of limitations).

## V.    CONCLUSION

Plaintiffs' claims should be dismissed in their entirety because Plaintiffs lack standing to obtain the relief they seek. If this Court finds that Plaintiffs have standing, it should still dismiss Plaintiff E.W. because he is not an aggrieved party and his claims are time-barred.

Respectfully Submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: March 18, 2015                    By: *Mark A. Aronchick*
                                         Mark A. Aronchick (Pa. Atty. No. 20261)
                                         Bonnie M. Hoffman (Pa Atty. No. 201140)
                                         Jason A. Levine (Pa. Atty. No. 306446)
                                         One Logan Square, 27th Floor
                                         Philadelphia, PA 19103
                                         (215) 568-6200
                                         (215) 568-0300 facsimile
                                         maronchick@hangley.com
                                         bhoffman@hangley.com
                                         jlevine@hangley.com

                                         *Attorneys for Defendant The School District of Philadelphia*